IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHRISTIE DAWN McCLEAVE, )
)
Plaintiff, )
)
) CIV-12-881-F
v. )
)
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
  Security Administration[1], )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner granting her social security disability benefits for a closed period from January 1, 2008 through August 31, 2009, and denying her benefits thereafter. The Commissioner determined that Plaintiff had been disabled during the closed period due to severe physical impairments, but that her disability ceased on September 1, 2009, when she experienced a medical improvement related to her ability to work. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. Background

On November 9, 2009, Plaintiff filed her applications alleging that she became unable to engage in substantial gainful activity beginning May 18, 2009. (TR 156, 160). She alleged disability due to breast cancer, arthritis, depression, bipolar disorder, anxiety, restless legs syndrome, and hypertension. (TR 18, 219). She later amended her alleged disability onset date to January 1, 2008.[2] (TR 61). She previously worked as a daycare worker and van driver. (TR 182).

At a hearing conducted in February 2011 before Administrative Law Judge Hiltbrand ("ALJ"), Plaintiff testified that she had undergone surgeries and chemotherapy for breast cancer and that the treatment was successful. She had also undergone a prophylactic hysterectomy and contralateral mastectomy. Plaintiff testified that she was treated by a nurse practitioner for wrist and arm pain, and she also had tingling and numbness in her hands, due in part to a torn ligament in her right elbow and ulnar nerve entrapment in her left wrist, for which she was being treated. Plaintiff testified she was being treated by Dr. Al-Khouri for bipolar disorder and post-traumatic stress disorder for which she was taking medication, and that she was "getting better." (TR 30).

In a written report and at the hearing, Plaintiff described her usual daily activities.

---

[2]Plaintiff stated that she stopped working on November 2, 2009. (TR 181). However, Plaintiff's earnings record shows very little income in 2008 and 2009. (TR 174).

(TR 19-20, 34-35, 156-157, 207-214). She described anxiety attacks that occurred intermittently "[p]robably not every month," and usually in crowded areas. (TR 43). She was being treated by Dr. Hughes for arthritis in her left knee, and she was being treated with medication by her nurse practitioner for restless leg syndrome.

A vocational expert ("VE") also testified at the hearing. Based on a hypothetical inquiry concerning an individual who from January 1, 2008 to September 1, 2009, could occasionally lift and carry objects up to ten pounds, stand and/or walk two hours in an eight-hour workday, and experienced a "moderate to a severe level of pain and fatigue, affecting her ability to work in a competitive environment," the VE testified that the individual could not perform work available in the regional or national economy. (TR 58).

In response to a second hypothetical inquiry concerning an individual who beginning September 1, 2009,[3] could occasionally lift and carry up to 50 pounds frequently and 25 pounds at a time, stand and/or walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, and had "mild" restrictions in daily activities, "mild" difficulties in maintaining social functioning, "mild" deficiencies in concentration, persistence or pace, and "mild to moderate" fatigue and discomfort "affecting her ability to work in a competitive environment," the VE testified that such an individual could perform Plaintiff's past relevant work as she performed it or as it is generally performed in the regional or national economy. (TR 58-59).

---

[3]In the second hypothetical inquiry, the ALJ actually inquired as to the availability of jobs from "September the 1st, 2010 to the present," but this statement is clearly an inadvertent error in stating the year in light of the first hypothetical inquiry. (TR 58).

II. The ALJ's Decision

The ALJ issued a decision on March 15, 2011. Following the well-established sequential evaluation procedure for disability applications, 20 C.F.R. § 404.1520, 404.1520a, 416.920, 416.920a, the ALJ found that Plaintiff had severe impairments due to breast cancer and arthritis and that, due to these impairments and resulting functional limitations, she was entitled to benefits for a closed period from January 1, 2008 through August 31, 2009. (TR 80-88).

Next, following the sequential evaluation process required by 20 C.F.R. §§ 404.1594 and 416.994 for determining whether a disability continues or has ended, the ALJ determined that Plaintiff had experienced medical improvement as of September 1, 2009, "the date the claimant's disability ended." (TR 83). See 42 U.S.C. § 423(f)(medical improvement standard for disability insurance benefits recipients); 42 U.S.C. § 1382c(a)(4)(medical improvement standard for supplemental security income benefit recipients); Shepherd v. Apfel, 184 F.3d 1196, 1198 (10th Cir. 1999)(holding "medical improvement standard" established in 42 U.S.C. § 423(f) and defined in 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1), applies in instances in which a claimant has been found disabled for a closed period of time). See also Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013)(in following steps required for determining whether disability continues, ALJ must determine whether medical improvement occurred by "compar[ing] the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled")(internal quotations and citation omitted).

4

On and after that date, the ALJ found Plaintiff was capable of performing the "full range of medium work" limited by a "mild to moderate level of pain and fatigue affecting her ability to work in a competitive environment." (TR 84). Considering Plaintiff's RFC for work during the time period in which she was found to be disabled and her RFC for work at the time of the decision, the ALJ determined that Plaintiff's medical improvement was related to her ability to work. (TR 83-88). See 20 C.F.R. § 404.1594(f)(3)-(4)("If there has been medical improvement as shown by a decrease in medical severity," ALJ must then determine "whether it is related to [claimant's] ability to do work."); Shepherd, 184 F.3d at 1201 (in determining whether medical improvement is related to claimant's ability to work,"ALJ must reassess a claimant's [RFC] . . . [and] then compare the new RFC with the RFC before the putative medical improvements")(citing 20 C.F.R. § 404.1594(c)(2)).

Given Plaintiff's RFC for work, along with her age, education, and work experience, and relying on the VE's testimony, the ALJ found that Plaintiff was not disabled beginning September 1, 2009, as she retained the capacity to perform her previous jobs as a daycare worker, van driver, and assistant director of a daycare. (TR 84-88). See Newbold, 718 F.3d at 1263 (considering newly-assessed RFC, ALJ "then considers whether [claimant] can still do the work she has done in the past" and "if claimant can perform either her past relevant work or other work, disability will be found to have ended")(quotations and citations omitted)).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481;

Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

IV. Burden of Proof in Applying Medical Improvement Standard

Challenging only the termination portion of the Commissioner's decision, Plaintiff alleges the ALJ applied an incorrect burden of proof to the termination decision because he placed the burden of proving a continuing disability upon Plaintiff. Plaintiff asserts that this legal error warrants a remand of the case to the agency with a directive to continue Plaintiff's benefits. The Commissioner responds that any misstatement concerning the burden of proof in the ALJ's decision was harmless error.

Plaintiff relies on the Tenth Circuit Court of Appeals' decision in Hayden v. Barnhart, 374 F.3d 986 (10th Cir. 2004). In that case, the court explained the process governing termination-of-benefit decisions. The court noted that "[i]f the Commissioner meets her burden of establishing that the claimant's medical condition has improved and that the improvement is related to the claimant's ability to work, the Commissioner must then

6

demonstrate that the claimant is currently able to engage in substantial gainful activity." Hayden, 374 F.3d at 991 (citing Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994) and 20 C.F.R. § 404.1594(4), (6), and (7)). The regulations clearly place the burden of proof in a termination decision on the Commissioner by providing, for example, that "[i]n most instances *we must show* that [the claimant is] able to engage in substantial gainful activity before [the claimant's] benefits are stopped." 20 C.F.R. § 404.1594(5)(emphasis added).

In this case, the ALJ stated the burden of proof applicable to review of a disability claimant's applications:

> Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the [claimant's] residual functional capacity, age, education, and work experience.

(TR 78).

The ALJ assigned the same burden of proof to the decision of whether a claimant's disability continued or ceased after a determination that the claimant is entitled to a closed period of benefits. The ALJ stated:

> At the last step, the undersigned must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 C.F.R. § 404.1594(f)(8) and 416.994(b)(5)(vii)). If the claimant can perform other work, she is no longer disabled. If the claimant cannot perform other work, her disability continues. Although the claimant generally continues to have the burden of proving disability at this step, a

7

> limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the [claimant's] residual functional capacity, age, education, and work experience.

(TR 79). The ALJ failed to recognize in the decision that the burden of proof is wholly different in a termination decision and applied a clearly erroneous legal standard that did not assign the Commissioner the burden of proof at each step of the evaluation process, not just at the last step.

The Commissioner admits that the ALJ committed legal error in stating the burden of proof with respect to the termination decision but contends that the error is harmless. The Commissioner argues that because there is "no other language" in the decision showing the ALJ placed the burden on Plaintiff to prove she continued to be disabled, the ALJ actually reviewed the evidence "on a neutral basis as required by the regulations." Brief in Support of Commissioner's Decision, at 7. But even assuming the ALJ reviewed the evidence "on a neutral basis," as required by 20 C.F.R. § 404.1594(b)(6), this method of reviewing the evidence is not adequate if the ALJ did not evaluate the evidence under the correct legal standard.

In Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004), the Tenth Circuit recognized that "a missing dispositive finding" may be appropriately supplied by an ALJ "under the rubric of harmless error" but only when "based on material the ALJ did at least consider (just not properly, [the court] could confidently say that no reasonable

8

administrative factfinder, following the correct analysis could have resolved the factual matter in any other way."

In this case, nothing in the decision creates such confidence. In Allen, the court was addressing the ALJ's missing step three findings in denying a disability claimant's application for benefits. In another more recent case, Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162-1163 (10th Cir. 2012), the Tenth Circuit held that an ALJ's error in analyzing a consulting psychologist's medical source opinion did not prejudice the Plaintiff because "giving greater weight to [the] opinion would not have helped her," and under these circumstances the ALJ's error was harmless). Neither of these decisions address a fundamental error, like the one here, in assigning the burden of proof.

Moreover, as Plaintiff points out in her Reply Brief, former Magistrate Judge Argo in this Court previously rejected a similar "harmless error" argument when the wrong burden of proof was applied by an ALJ in a termination decision. Mootz v. Astrue, Case No. CIV-10-273-C (W.D. Okla. 2011)(Argo, M.J.)(unpublished Report and Recommendation), adopted without objection by Order entered February 28, 2011 (Cauthron, D.J.).[4]

The error cannot be considered harmless in this case, even if a harmless error review was possible, because the ALJ failed to develop the record with respect to Plaintiff's

---

[4]Magistrate Judge West of the Eastern District of Oklahoma, reached the same conclusion in a similar case, finding that an ALJ's statement in his decision with respect to a termination of benefits analysis that "'although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration'" was a misstatement of the burden in termination cases that mandated reversal of the Commissioner's decision. Pinkston v. Astrue, 2012 WL 3527926 (E.D. Okla. 2012)(unpublished Report and Recommendation), adopted by Order entered August 15, 2012 (Seay, D.J.).

9

medically-determinable mental and physical impairments. Plaintiff was diagnosed by her treating psychiatrist, Dr. Al-Khouri, with bipolar disorder and post-traumatic stress disorder in March 2010, and the record shows that Plaintiff was prescribed both anti-anxiety and anti-depressant medications by her treating oncologist during the time period in which she was found disabled. In a report of Dr. Al-Khouri's initial psychiatric evaluation of Plaintiff in March 2010, Dr. Al-Khouri noted a diagnostic impression of Bipolar I disorder, recent episode depressed with psychotic features, and post-traumatic stress disorder with a current GAF[5] score of 45. (TR 390-391). "A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007)(quotation, brackets, and ellipsis omitted).

The Tenth Circuit has recognized in an unpublished decision that "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." Lee v. Barnhart, 117 Fed.Appx. 674,678 (10th Cir. 2004)(unpublished op.). However, other evidence in the record is consistent with Dr. Al-Khouri's assessment of significant functional limitations. Dr. Mohammed examined Plaintiff in September 2010 when Plaintiff sought inpatient mental health treatment and, following

---

[5]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), at 25-32).

an initial evaluation of Plaintiff, noted a diagnostic impression of post-traumatic stress disorder and bipolar disorder not otherwise specified and assessed her as having a "current" GAF score of 30. (TR 501-503, 507). "A GAF score in the 21-30 range indicates '[b]ehavior [that] is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).'" Zaricor-Ritchie v. Astrue, 452 Fed.Appx. 817, 822 (10th Cir. 2011)(unpublished op.)(quoting DSM-IV at 34). The ALJ failed to address these low GAF scores in the decision.[6]

A consultative psychological evaluation would have helped to resolve the issue of whether Plaintiff's medically-determinable mental impairments impacted her ability to work, particularly in light of the two low GAF scores assessed by examining and treating psychiatrists during the relevant time period and the records of treatment of Plaintiff by Dr.

---

[6]The ALJ gave "little weight" to Dr. Al-Khouri's opinion that Plaintiff was disabled by her mental impairments and that she also would be "markedly limited" in several work-related mental abilities (TR 517-519, 522-535) in part because "Dr. Al-Khouri repeatedly commented in his progress notes that the claimant was 'doing ok.'" (TR 87). The office notes of Dr. Al-Khouri in the record indicate that "doing ok" concerned Plaintiff's self-reporting of her mood and other symptoms and often were accompanied by other reports of mood swings, depression, and "bad days." (TR 415-428). Thus, the comments do not provide evidence to support the ALJ's finding that the opinion was not entitled to controlling weight. Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed psychotropic medications. However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, which could include her bipolar disorder. 20 C.F.R. §§404.1530©, 416.930©. See Jelinek v. Astrue, 662 F.3d 805, 814 (7th Cir. 2011)("ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."). These issues should be addressed on remand.

11

Al-Khouri showing she continued to exhibit paranoid behavior and other symptoms throughout 2010. See Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997)(consultative examination is often required where medical evidence in the record is inconclusive).

Moreover, Plaintiff was diagnosed with probable ulnar nerve entrapment by her treating oncologist, and MRI testing in January 2011 showed a partial tear of her right ulnar collateral ligament, which was consistent with her assertions of pain and lack of mobility in her right elbow. (TR 454). The ALJ mentioned the finding but indicated there was "no further medical evidence of record showing treatment for her elbow." (TR 86). This statement indicates the ALJ was placing the burden on Plaintiff of showing that this impairment would impact her ability to work rather than on the Commissioner to demonstrate that she was capable of working.

Plaintiff requests that the Commissioner's decision be reversed with an order to reinstate her benefits beginning September 1, 2009, on the basis that a reversal of a determination that benefits should terminate vacates the termination decision and returned the claimant to the status of a disabled claimant. In Hayden, the Tenth Circuit concluded that in a termination of benefits case a reversal of the Commissioner's final decision "means that the case is simply remanded to the agency" and that the plaintiff in that case, who had "already been adjudged to be disabled by the Commissioner, maintain[ed] her disability status and [was] entitled to payment of any benefits that [had] been withheld during the appeals process." Hayden, 374 F.3d at 994.

The Commissioner responds that reinstatement of benefits is not appropriate because

(1) the Hayden decision addressed a termination decision after the claimant had been receiving benefits for almost seven years and (2) under the regulations, 20 C.F.R. §404.1597a, 416.996, an individual may not elect to continue benefits during an appeal of a termination decision in a closed-period determination.

The agency has prescribed by regulation that a claimant may elect to continue to receive disability benefits "pending reconsideration and/or a hearing before an [ALJ] on the disability cessation determination." 20 C.F.R. § 404.1597a(a). The continuation of disability benefits under this section stops "[t]he month before the month in which an [ALJ]'s hearing decision finds that [the claimant's] physical or mental impairment(s) has ceased, has never existed, or is no longer disability. . . . Id. at 404.1597(b)(3)(I). However, the regulations also contemplate that when a decision is remanded to an ALJ for further action, "continued benefits are payable pending a new decision. . . ." Id. at 404.1597(I). It is upon this latter provision that the court in Hayden based its conclusion that Ms. Hayden was entitled to have her benefits restored when the Commissioner's termination decision was reversed, and the court remanded the case "to the Commissioner for reinstatement and payment of continuing benefits." Hayden, 374 F.3d at 994.

Following Hayden, the undersigned agrees with Plaintiff that a reversal of the Commissioner's decision to terminate her disability benefits means she is entitled to payment of the benefits that she would have received as a disabled individual from the date on which those benefits ceased, September 1, 2009.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to terminate Plaintiff's benefits and REMANDING the case to the Commissioner for reinstatement and payment of continuing benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before September 9th, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 19th day of August, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE